UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | 19 Cr. 292 (JDB) |
| v. | : | |
| REGINALD MAURICE SUTTON | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM
IN AID OF SENTENCING**

**INTRODUCTION**

Defendant Reginald Sutton is currently pending sentencing before this Court, after pleading guilty to Conspiracy To Possess And Possess With Intent To Distribute A Detectable Amount of Cocaine Base, in violation of 21 United States Code Section 84(a)(1), (b)(1)(C). The parties agree that the defendant's Adjusted Base Offense Level is 17, with a Criminal History Category III, which corresponds to a presumptive guideline sentence of 30-37 months. The defendant was incarcerated at the D.C. Jail and Correctional Treatment Facility for almost seven months - from September 5, 2019 until he was released on March 31, 2020 to home detention because of the risk posed by the COVID-19 pandemic.

Mr. Sutton is almost forty-nine years old and as noted in prior pleadings, suffers from a variety of serious medical issues, including hypertension and diabetes. He suffered a traumatic leg injury several years ago and remains at risk of losing the limb to amputation. Mr. Sutton has remained in compliance with his conditions of release for the last eight months. Given the defendant's age, poor health, relatively minor role in this case, the sentences imposed by this Court against the co-defendants, the extraordinary threat that covid-19 poses to his health, as well as the other sentencing factors set forth in 18 United States Code 3553(a), the defense does

1

not believe that further incarceration is warranted in this case. Rather, the defense asks this Court to grant a downward variance and sentence Mr. Sutton to a term of imprisonment of fourteen (14) months under Zone C of the Federal Sentencing Guidelines, to be served as a "split sentence," with credit for his seven-months of incarceration, plus an additional seven months of home detention. This request will satisfy the statutory requirement that the court impose a sentence "sufficient, but no greater than necessary" to punish and deter. Kimbrough v. United States, 552 U.S. 85, 101 (2007). This Court can impose a term of supervised release to ensure that the defendant understands that any further criminal conduct will guarantee his return to prison.

In the final analysis, Mr. Sutton has acknowledged his guilt. He wants nothing more than to put this criminal case behind him, obtain lawful employment, spend time with his family and loved ones, and rejoin society as a law-abiding citizen. The defense will shortly submit under seal copies of a letter written by the defendant and other family members.

**FACTUAL BACKGROUND**

This case arises from a long-term investigation conducted by the Metropolitan Police Department and the Federal Bureau of Investigation into the drug trafficking activities of co-defendants Larry Key and Stephon Davis. During the more than year - long investigation, the Government obtained authorization to intercept the telephones of these two defendants and also used an undercover informant who made eight controlled narcotics purchases from the organization. Law enforcement conducted surveillance of the locations that the defendants used as stash houses.

Defendant Sutton had at best, a peripheral and minor role in this case. He never met with the undercover informant, was not identified during the surveillance of the case, and indeed, the

Government did not seize any drugs from his person or apartment. Rather, he was connected to the criminal case because of two sets of intercepted text messages which took place during a two-week period. Thus, the Government's evidence established that he was involved in drug transactions on: (1) July 30, 2019, involving 12 grams of cocaine base; and (2) August 15, 2019, involving 14 grams of cocaine base, for a total of 26 grams.

Against this factual backdrop, the requested sentence is eminently reasonable.

## LEGAL ANALYSIS

**Federal Sentencing Guidelines**

In <u>United States v. Booker</u>, 542 U.S. 220 (2005), the Supreme Court ruled that the federal sentencing guidelines were no longer mandatory, but merely advisory upon the district courts. Thus, federal district court judges are no longer reduced to the status of automatons, simply calculating a guideline sentence and then being required to impose it. Rather, the current regime is premised on flexible sentencing, after consideration of both the guidelines and the defendant's individualized personal circumstances.

Thus, while a sentencing court will generally begin its analysis with reference to the relevant guideline range, it should entertain arguments from the parties as to whether a non-guidelines sentence is appropriate. <u>Rita v. United States</u>, 551 U.S. 338, 351 (2007). In making this decision, the trial court should generally consider the other sentencing factors set forth in 18 U.S.C. Section 3553(a). <u>Kimbrough v. United States</u>, 552 U.S. 85, 109 (2007). The district courts have discretion to impose a non-guideline sentence based upon their assessment of each individual case. See <u>Gall v. United States</u>, 552 U.S. 38, 47-48 (2007)(abuse of discretion standard applies to review of sentence outside guideline range and there is no mathematical test for reasonableness of sentence).

With these admonitions in mind, this memorandum analyzes the guideline sentence and the other relevant sentencing factors as they apply to this case.

**Presentence Report Adjusted Guideline Calculation**

In this case, the Presentence Report computes the defendant's guideline calculation as follows:

| | |
|---|---|
| Base Offense Level | 22 |
| Downward Adjustment Acceptance of Responsibility | -2 |
| Early Entry of Plea | -1 |
| Adjusted Total Offense Level | 19 |

The Presentence Report notes that the defendant would be eligible for a two-level sentence reduction pursuant to the "safety valve" provisions of the federal sentencing factors and the parties both agree that the reduction is warranted in this case. See https://fas.org/sgp/crs/misc/R41326.pdf (*Federal Mandatory Minimum Sentences: The Safety Valve and Substantial Assistance Exceptions*). This results in a Total Offense Level 17. The parties also agree that the defendant has a Criminal History Category III, which results in a guideline range of 30 -37 months.

## FEDERAL SENTENCING FACTORS

Under the federal sentencing statute, 18 United States Code Section 3553(a), the factors to be considered in the imposition of sentencing include: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentencing to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment; (3) specific and general deterrence; (4) the need to provide the defendant with training, medical care,

or treatment; available sentencing alternatives; (5) consistency in sentencing among similarly-situated defendants; and (6) the need to provide restitution. See 18 U.S.C. § 3553(a).

**1. Nature And Circumstances Of Offense/Defendant's Personal Characteristics**

Defendant Reginald Sutton pled guilty to participation in a drug trafficking conspiracy. His role in the offense, however, was extremely limited. During the comprehensive one-year investigation, the defendant was only intercepted on two occasions arranging to purchase drugs. The events take place during a two-week long period and he was not otherwise identified during the investigation or the surveillance conducted by the MPD and FBI. Likewise, Mr. Sutton had no contact with the undercover informant in this case. The drug quantity attributed to him is twenty-six (26) grams of cocaine base, which does not trigger a mandatory minimum sentence.

As to his personal characteristics, the defendant is an almost forty-nine year-old long term resident of the Washington, D.C. metropolitan area. He is a dedicated father to his five children and devoted to his six grandchildren. Mr. Sutton also remains close to his mother, who resides in the region. For many years Mr. Sutton was gainfully employed, but in 2018 he seriously injured his leg while working for a moving company. That injury continues to plague him until today. Mr. Sutton's leg remains swollen and discolored and perpetually appears infected. As a result, he is in constant pain and has very limited mobility. Mr. Sutton suffers from a litany of other health problems, including: (1) obesity (he is 5'8" and weighs 300 pounds); (2) diabetes; (3) high blood pressure; and (4) suffers from seizures, which began approximately five years ago. His health problems are almost certain to become more substantial as he ages. For the reasons set forth herein, both his age and his health problems support the requested downward variance in this case.

*Poor Health/Covid-19Pandemic*

A review of relevant cases reveals that numerous courts have recognized that poor health would warrant a downward departure under the sentencing guidelines. See United States v. Nellum, 2005 WL 300073 at *2 (N.D. Ind. Feb. 3, 2005) (sentencing 57-year-old repeat offender with medical problems to 108 months where guideline range was 168 to 210 months). See also United States v. Gray, 453 F.3d 1323, 1324 (11th Cir. 2006); United States v. Moy, 1995 WL 311441 at *26-27 (N.D. Ill. May 18, 1995); United States v. Baron, 914 F.Supp. 660 (D. Mass. 1995). The cumulative weight of the defendant's health problems would warrant consideration in the Court's sentencing determination.

In addition, Mr. Sutton's significant health issues subject him to an exponentially increased risk from covid-19. As the Court undoubtedly knows, the United States prison system is overwhelmed and largely unable to manage the covid-19 pandemic. As of November 13, 2020, the Federal Bureau of Prisons reported that:

> The BOP has **125,375** federal inmates in BOP-managed institutions and **14,097** in community-based facilities. The BOP staff complement is approximately **36,000**. There are **3,121 federal inmates** and **1,049 BOP staff** who have confirmed positive test results for COVID-19 nationwide. Currently, **17,168** inmates and **1,605** staff have recovered. There have been **137** federal inmate deaths and **2** BOP staff member deaths attributed to COVID-19 disease.

https://www.bop.gov/coronavirus/ (emphasis in original). According to these statistics, almost 14 percent of all inmates in federal custody have contracted covid-19. It is also possible that the actual infection rate is higher, because the data does not reveal what percentage of the BOP population was tested.

The covid-19 virus is remarkably contagious and can be fatal to the young, the old, the sick, the healthy; it does not discriminate based upon race, ethnicity or national origin. While the Center for Disease Control has warned all Americans to engage in social distancing, to wear

masks, to wash their hands and remain vigilant, more than 240,000 citizens have already perished in the chaos of covid-19. Inmates in the federal Bureau of Prisons, however, cannot engage in social distancing, they are living twenty-four hours a day in a veritable petri dish, as the conditions of confinement are the perfect incubator for covid-19. A recent National Public Radio story details the problems facing inmates behind bars. See https://www.npr.org/sections/coronavirus-live-updates/2020/11/12/934363254/pandemics-deadly-toll-behind-bars-spurs-calls-for-change-in-u-s-jails-and-prison.

Under the authority of the First Step Act, courts in this jurisdiction (and others) have concluded that the covid-19 pandemic as the basis for a post-sentence reduction. See, e.g., United States v. Curtis, 2020 WL 1935543 (D.D.C.)(Howell, C.J.)(covid-19 presents extraordinary and compelling to reduce sentence). Accord United States v. Powell, 2020 WL 4578682 (D.D.C.)Huvelle, J.). The world-wide covid-19 pandemic is a factor not otherwise considered by the Federal Sentencing Guidelines and is thus, an appropriate and permissible consideration for this Court in its calculation of an appropriate downward sentencing variance. See United States v. Rhodes, 145 F.3d 1375 (D.C Cir. 1998)(factor not prohibited but not considered by sentencing guidelines can serve as basis for downward variance). [1]

---

[1] Undersigned has not located any decisions – either on Westlaw or the District Court's website – that specifically address consideration of covid-19 as a sentencing factor. Counsel recently participated in a sentencing in the United States District Court for the Eastern District of New York and consulted with the Federal Public Defender in that jurisdiction, which maintained a list of cases in which district court judges had considered the virus as a mitigating factor in sentencing. For example, in *United States v. Kenner*, 13 Cr. 607 (JFB), the district court stated that it was imposing a reduced sentence after the defendant's conviction for wire fraud after a jury trial because of the covid-19 pandemic. Similarly, in *United States v. Morgan*, 19 Cr. 209 (RB), the court sentenced a defendant to less than half the time of his guideline sentence in a bank fraud case because of the onerous conditions of confinement at the MDC. In *United States v. Espinel*, 19 Cr. 622 (DLC), Judge Cote stated that the harsh conditions created by covid must be acknowledged and reduced the defendant's sentence ten month below the low end of the guideline. U.S. district court judge Vitalliano reached the same conclusion in *United States v. Hendrx*, 18 Cr. 478, noting the "special horrors" visited upon defendants at the MDC during the pandemic and imposing a below guideline sentence in a felon-in-possession of a firearm case. And in *United States v. Cirrino*, Judge Rakoff imposed a ten-month sentence in a Hobbs Act case, where the presumptive guideline sentence was 57-71 months, stating that the pandemic was a mitigating factor in his decision.

*Defendant's Age/Recidivism/Prior Criminal History*

The PSR in this case reveals that the defendant has several prior convictions and a fair reading of his history reveals that he has had problems following through while on probation. These problems while previously on probation might raise questions about his commitment to rehabilitation.

The defendant's conduct while on release in this case, however, demonstrates a renewed commitment to following the rules while on release. Mr. Sutton has not been found to have committed any violations of his release conditions and he has been faithful about contacting undersigned to ensure compliance with the Court's order. In this regard, the defense believes that Mr. Sutton's age has had a salutary effect on his behavior and that his age is relevant to this Court's sentencing decision. Mr. Sutton is now almost forty-nine (49) years old. According to data compiled by the Federal Sentencing Guideline Commission, his likelihood of recidivism is decreased because of his advanced age. United States v. Martinez, 2007 WL 593629 (D. Kan). Accord United States v. Jayyousi, 657 F.3d 1085, 1171 (11 Cir. 2007)(recidivism decreases with age).

More importantly, several courts have relied upon age as a factor to warrant a downward sentence variance. In United States v. Carmona–Rodriguez, 2005 WL 840464 (S.D.N.Y.), for example, the defendant pled guilty to conspiracy to possess heroin and her adjusted guideline sentence was 46 to 57 months. The district court noted that other recent district court decisions had imposed below guideline sentences for defendants "who were over the age of forty on the grounds that such defendants exhibit markedly lower rates of recidivism." Carmona-Rodriguez at p. 3. Based upon her age and health problems with high blood pressure and diabetes, the district court imposed a sentence of only thirty months. Similarly, in United States v. Gray, 453 F.3d

8

1323 (11th Cir. 2006), the Court of Appeals affirmed a sentence of seventy-two months of incarceration when the defendant's guideline range was 151-188 months. Even though this defendant had possessed as many as three hundred pornographic images of children, the district court gave a downward variance of more than fifty percent because of his "age, his prior minimal criminal record, and his medical condition." 453 F.3d at 1325. A similar sentence reduction would certainly be justified in this case based upon exactly the same factors.

2. *Seriousness Of The Offense/Promote Respect For The Law/Appropriate Punishment*

There is no doubt that the crime for which the defendant admitted his guilt is a serious matter. Drug trafficking in the Washington, D.C. area – or anywhere in this country – is a root cause of violence and has ruined untold lives. The defendant understands that he violated the law and has written a letter to the Court (which will be submitted under seal along with letters of support from his family) admitting his guilt and accepting responsibility for his criminal conduct.

The Court's responsibility under the federal sentencing guidelines is to fashion a sentence that promotes respect for the law and reflects the seriousness of the offense. In many ways, this is an existential quest, but as at least one district court judge has noted "it is not always necessary to incarcerate a defendant to promote such respect and demonstrate the seriousness of the crime." United States v. Smith, 2009 WL 24917 (N.D. Ohio). What promotes respect for the law is a fair sentence. Under the totality of the circumstances in this case, the defense believes that a split sentence of fourteen months is fair and appropriate under the particular facts of his case.

3. *Specific and General Deterrence/Prevent Future Crimes*

The factor of specific deterrence also supports the requested sentence. The defendant has been clear that he never intends to be involved in criminal activity again. Indeed, he has told

counsel that he will wash dishes or floors or drive a taxicab before he will be involved in such matters ever again.

As to general deterrence, it is clear that United States law enforcement at both the national and local level are aggressively investigating drug trafficking offenses and that the cases are being prosecuted in federal court, with significantly higher potential sentences and the existence of mandatory minimums. No further general deterrence would be accomplished by additional punishment for this defendant.

### 4. *The Need To Avoid Sentencing Disparity*

The Federal Sentencing statute expressly provides that the Court should avoid sentencing disparities between similarly situated defendants. See 18 U.S. Code Section 3553(a)(6). A comparison of sentencings imposed in this case is somewhat complicated by the fact that Mr. Sutton occupied a very low position in the hierarchy of the conspiracy. The closest comparison in this case is co-defendant Warren Boyd, who pled guilty to distributing between 22.4 and 26.0 grams of crack cocaine. Defendant Boyd had a presumptive guideline sentence of thirty to thirty-seven months. He had a lengthy history of criminal arrests and convictions, but they were outside of the window for counting towards his criminal history. The Government's Motion For Pretrial Detention in this case, summarized defendant Boyd's involvement in the case as follows:

> BOYD met with DAVIS every few days and got up to 7 grams of cocaine base at a time. During the period of interceptions, there were 47 pertinent communications between BOYD and DAVIS and they met approximately 24 times.

DE 35 at p.10 (*Gov. Motion Pretrial Detention*). The Government recommended a sentence of thirty-six months, but notwithstanding Boyd's much more significant involvement in the conspiracy, this Court imposed a sentence of only twenty (20) months. See DE 213 (*Judgment*

10

*And Commitment*). In order to avoid sentencing disparity, this Court should impose a lesser sentence against defendant Sutton. [2]

## THE REQUESTED SPLIT SENTENCE

The Federal Sentencing Guidelines provide that for sentences which fall within Zone C of the Sentencing Table, the Court may impose:

> a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment.

U.S.S.G. Section 5C1.1(d)(2).

In this case, the defendant was incarcerated from September 5, 2019 until March 31, 2020, or approximately seven months. He also successfully completed an additional eight months of what was essentially home confinement. A sentence of fourteen (14) months would fall within the Zone C of the Sentencing Table. Other courts have varied downward from the guidelines to allow the defendant the benefit of Zone C's sentencing flexibility. See United States v. Rutherford, 323 F.Supp.2c 911 (E.D. Wisc. 2004)(court departed downward as the result of extraordinary rehabilitation which placed defendant in Zone C; split sentence imposed); United States v. Givens, 2006 2006 WL 3390752 (D.Neb.)(downward variance imposed to place defendant within Zone C of guidelines table).

Given the situation created by the pandemic and the defendant's significant health problems (which led the Government not to oppose his release after the entry of a guilty plea), it

---

[2] The remaining sentencing factors are: (1) the need to provide the defendant with training, medical care, or treatment; available sentencing alternatives; and (2) the need to provide restitution. They do not appear to apply to the facts and circumstances of this case. The defense requests that this Court not impose an order of restitution because there is no definable group of victims. See 18 U.S.C. Section 3663(a). Similarly, the defense request that no fine be imposed. The Presentence Report correctly notes that the defendant has no available assets to use for such payment.

11

is possible (or even likely) that the defendant will not be ordered to surrender to the Bureau of Prisons for several months at least. In addition, under the Bureau of Prisons guidelines, Mr. Sutton would be eligible for transfer to a "Residential Re-Entry Center," or halfway house, approximately six months before the end of his sentence. While placement in a halfway house was previously considered more favorable than incarceration in a prison, as the result of the pandemic, it might well be more dangerous to be in a halfway house because the residents are released during the day to work or search for employment. This would exponentially increase the number of persons that they come into contact with and the concomitant risk of infection from covid-19.

Rather than subjecting the defendant to additional waiting time of unknown duration before his surrender, sending him into a Bureau of Prison facility during the covid-19 pandemic, and then possibly transferring him to a halfway house, the defendant respectfully asks this Court to grant him a downward variance to fourteen month and impose a split sentence under Zone C of the Sentencing Table. In addition, the defendant personally requested that counsel specifically ask this Court to allow him the opportunity to work while on home confinement. Mr. Sutton finds himself between the proverbial "rock and a hard place." He is understandably very scared to be sent to a federal prison, but at the same time, it would be an enormous financial burden if he is not allowed to work. His only source of income is a disability check, which is barely sufficient to pay for rent, food and other monthly costs. It would be extraordinarily unfair to force him into incarceration because he (and his family) lack the financial resources to support him on home detention.

Finally, under the sentencing guidelines, the Court can also impose a period of supervised release following the end of the sentence. The additional time, with appropriate monitoring, will

act as a guarantee that Mr. Sutton will continue to avoid any future contact with the criminal justice system. If he fails to do so, then the Court would still have at its disposal the option of an additional period of incarceration.

## CONCLUSION

The sentencing of any person is a complex task for the Court. Through the submission of this memorandum, the defense has tried to provide context to assist the Court in imposing a sentence that satisfies that requirements of the law and our notions of justice. For all the reasons set forth in this memorandum, the defense asks this Court to grant a downward variance and sentence defendant Reginald Sutton to a split sentence of fourteen months, with credit for time served from the date of his arrest on September 5, 2019 until March 31, 2020.

        Respectfully submitted,

        *Robert Feitel*

        _____
        Robert Feitel, Esquire
        1300 Pennsylvania Avenue, N.W.
        Washington, D.C. 20008
        D.C. Bar No. 366673
        202-450-6133 (office)
        202-255-6637 (cellular)

        RF@RFeitelLaw.com

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was sent via ECF, to Assistant U.S. Attorney Gregory Rosen, 555 4th Street, N.W., Washington, D.C. this 17th day of November 2020

*Robert Feitel*

_____
Robert Feitel